**FILED**
**JANUARY 11, 2010**
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MARIANO GARCIA, PRO SE, <br> TDCJ-CID No. 1006112, <br><br> Plaintiff, <br><br> v. <br><br> DHIRAJLAL PATEL, Medical Doctor, and <br> FLOYD BAXTER, Facility Health <br>   Administrator, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | 2:10-CV-0008 |

# REPORT AND RECOMMENDATION

Plaintiff MARIANO GARCIA, acting pro se and while a prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-referenced defendants and has been granted permission to proceed in forma pauperis.

Plaintiff alleges he initially complained of pain and swelling in his groin in November of 2005 and, after a quick examination, defendant Dr. PATEL diagnosed arthritis. Plaintiff says he was prescribed Ibuprofen in December of 2005 for pain, and that it was renewed up to April 25, 2006. Plaintiff says he continued to complain of pain and, after lab work was performed, he was diagnosed with Hepatitis C on December 1, 2006.

Plaintiff states he made further sick call requests in March of 2007 and was seen by a visiting doctor who recommended plaintiff be seen by a blood specialist to determine why plaintiff's white blood cells were low. Plaintiff says defendant Dr. PATEL ignored the recommendation.

Plaintiff also states On August 3, 2007, he was seen by a Reginald Platt III, whom plaintiff identifies as Dr. Patel's substitute, diagnosed an "indirect hernia" with danger of strangulation and placed plaintiff on the medically unassigned list for work, with additional restrictions.  Plaintiff argues the actions of Mr. or Dr. Platt show defendant PATEL had acted with deliberate indifference to his serious medical needs.  Plaintiff states he was given a hernia belt in August of 2007, but it did very little to support the hernia and Dr. PATEL increased his prescription for Ibuprofen.

Plaintiff alleges he sent an I-60 to the infirmary on January 4, 2008 requesting written documentation showing a lifting restriction due to his hernia so he wouldn't have to carry his property, about 50 lbs., to the Unit Gym for the upcoming semi-annual unit shakedown and was told he didn't have any lifting restriction.

Plaintiff further alleges on January 18, 2008 he complained his hernia pain had greatly intensified and, after a brief visit with Dr. PATEL, was instructed to take Naproxen instead of Ibuprofen because the Ibuprofen was not good for his liver and that his hernial drop was not serious enough for surgery.  Plaintiff says his Naproxen prescription was renewed through October of 2008 but that no patient with liver disease should ever take Ibuprofen or Naproxen because they can damage the liver.

Plaintiff states that, on January 28, 2008, he was assigned to work in the boot factory. Plaintiff filed an I-60 to the infirmary the next day.  The response was that he was no longer on the list of inmates medically restricted from work and had the following work and housing restrictions: 1. lower bunk; 2. do not assign to medical; 3. no lifting over 25 lbs.; and 4. no climbing.

Plaintiff checked on his medical restrictions again in March of 2008 and was told he was limited to four hours of sedentary work, with no lifting and no climbing. Plaintiff says, when he showed this to his Boot Factory Supervisor, Mr. Burkett, he told plaintiff the four-hour work limit had been discontinued and told plaintiff he could work at one station for four hours standing, and at another station for four hours sitting, working from 06:00 to 13:00. When plaintiff complained to Dr. PATEL, Dr. PATEL had a nurse check and discovered that the four hour work limitation was no longer honored by prison staff.

Plaintiff's attempt to resolve the matter through the infirmary received the response that he had been given the available limitation, #4. Plaintiff does not explain what that limitation was. Plaintiff's attempt to resolve the matter through Classification elicited the response that he was assigned to work for four hours standing up and for four hours sitting down. Plaintiff says he complied with his work assignment even though it caused him to strain and "aggitated" his hernia.

On October 1, 2008 plaintiff's Naproxen was discontinued because of its effect on his platelet count. On November 24, 2008, plaintiff complained of weakness and was seen by Dr. Hanna, who recommended an ultra-sound test on plaintiff's liver to check on the extent of liver damage. Later that day, plaintiff experienced a sudden increase in pain and swelling and was transported to the emergency room of the Pampa Regional Medical Center were he had an ultra sound procedure. While at the Pampa hospital, the doctor opined the fact that he had been taking Ibuprofen and Naproxen explained why his platelet levels were so low.

Plaintiff was then transported to Northwest Texas Hospital in Amarillo, where a "scan test" was done. Plaintiff says he heard the doctor tell his guards that he should be admitted

overnight and some type of procedure or surgery should be done the next morning, but that he did not receive any response to his e-mail request for permission.  After some time, plaintiff was discharged and transported back to the Jordan Unit.

Subsequently, plaintiff had several trips to Clements and to Montford to check his hernia and his platelet levels.  Plaintiff complains these tests could have been done at his unit of assignment and the trips caused him pain.  On May 27, 2009, plaintiff received surgery and was returned to his assigned unit eight days later.  On June 15, 2009, plaintiff was sent to the emergency room in Pampa for an infection that had developed in the area of the incision.  Although he was prepped for treatment, he says he was not treated but was transported to Lubbock at the request of the Montford Unit.  Plaintiff says he was shackled during transport, causing him still more pain.  Once at the Montford Unit, plaintiff received treatment and was released July 17, 2009.

Plaintiff claims the delay in receiving surgery, the prescription of Ibuprofen and then Naproxen over a three-year period which contributed to his liver damage and low platelet level, caused plaintiff unnecessary pain and required additional stitching of a patch about the abdominal wall for reinforcement, affecting his daily activities.  Plaintiff argues this constituted deliberate indifference.

Plaintiff requests compensatory damages of $125,000.00 and punitive damages of $125,000.00.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2).  The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions.  42 U.S.C. 1997e(c)(1).  A *Spears* hearing need not be conducted for every *pro se* complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[2].

The Magistrate Judge has reviewed the facts alleged by plaintiff to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

## THE LAW AND ANALYSIS

Initially, the Court notes that many of plaintiff's claims are now barred by operation of limitations.  There is no federal statute of limitations for civil rights actions; therefore, the two-year Texas general personal injury limitations period is applied.  *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993).  Plaintiff signed and, presumably, filed this lawsuit on January 6, 2010. It appears that all of the claims which accrued before January 6, 2008 are barred by limitations.

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see*, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

[2] *Cf*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing.  A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

Consequently, these claims lack an arguable basis in law and are frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). However, not every claim of inadequate or improper medical treatment is a violation of the Constitution, *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); nor does a disagreement with a doctor over the method and result of medical treatment require a finding of deliberate indifference. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). "[N]egligent medical care does not constitute a valid section 1983 claim." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Further, merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).

Plaintiff's claim of deliberate indifference based on his January 18, 2008 complaints and treatment fails to state a claim on which relief can be granted. The facts plaintiff alleges might support a claim of negligence, if that, but do not cross the thresholds separating the "conclusory"

from the "factual" and the "factually neutral" from the "factually suggestive" to show deliberate indifference. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ___ n.5, 127 S.Ct. 1955, 1966 n.5, 167 L.Ed.2d 929 (2007).

While plaintiff argues his January 2008 work assignment to the boot factory aggravated his hernia, the facts he alleges show neither of the named defendants was responsible for that assignment and that defendant PATEL gave him restrictions to prevent harm to him. Subsequent to that date, plaintiff's complaints about his medical care do not pinpoint any act or omission by defendants PATEL or BAXTER. Plaintiff does complain that neither of them responded to the e-mail sent by the doctor at Northwest Texas Hospital for permission to perform surgery, but plaintiff alleges no fact indicating either of them learned of the e-mail in time to respond before his release or that his discharge to the Jordan Unit for later surgery at Montford constituted deliberate indifference.

While the facts alleged by plaintiff, if supported by further facts might state a claim of negligence against someone, plaintiff has not alleged those additional facts or identified the person(s) at fault. In any event, section 1983 is not a general tort statute, and mere negligence does not meet the standard for liability under section 1983. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Daniels v. Williams*, 474 U.S. 327, 331-34, 106 S.Ct. 662, 664-67, 88 L.Ed.2d 662 (1986).

Moreover, to the extent plaintiff bases his claims against defendant BAXTER on BAXTER's supervisory position, the acts of subordinates trigger no individual section 1983 liability for supervisory officers. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314(5th Cir. 1999). A supervisor may be held liable only when he is either personally involved

in the acts causing the deprivation of a person's constitutional rights, or there is a sufficient causal connection between the official's act and the constitutional violation sought to be redressed. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981) (*per curiam*). If plaintiff is alleging defendant BAXTER did not adequately investigate his complaint or satisfactorily resolve his disagreement with Dr. PATEL's treatment, plaintiff does not allege he knew of any facts showing plaintiff's serious medical needs were being met with deliberate indifference.

## CONCLUSION

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(a), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil Rights Complaint filed pursuant to Title 42, United States Code, section 1983, by plaintiff MARIANO GARCIA be DISMISSED WITH PREJUDICE AS FRIVOLOUS AND WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 11th day of January 2010.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).